## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF NEW YORK

PAUL NAVARRO, as Guardian for　　　　　　:
Paul Navarro, Jr.,　　　　　　　　　　　　:
　　　　　　　　　　　　Plaintiff,　　　:　　Case No.:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　v.　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
INDEPENDENCE BLUE CROSS and　　　　　:
MSC INDUSTRIAL DIRECT CO, INC.,　　　　:
MEDICAL PLAN,　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　Defendants.　　:

### NOTICE OF REMOVAL

To the Honorable Judges of the United States District Court
　　　for the Eastern District of New York

Defendant, Independence Blue Cross files this Notice of Removal of this action from the

Supreme Court of the State of New York, County of Nassau in which it is now pending to the

United States District Court for the Eastern District of New York, and in support thereof states:

1.　　Petitioner exercises its right under 28 U.S.C. § 1441 to remove this action from the

Supreme Court of the State of New York, County of Nassau in which it is now pending.

2.　　This action is docketed in the Supreme Court of the State of New York, County of

Nassau at Index No. 612431/2017.

3.　　An amended complaint setting forth removable claims was served upon the removing

defendant on October 11, 2018.

4.　　This is an action in which the District Courts of the United States have original

jurisdiction, in particular, jurisdiction based upon claims relating to and arising under the

Constitution and laws of the United States pursuant to 28 U.S.C. § 1331.

5.　　This action relates to claims arising under the Employees Retirement Income Security Act

of 1974, ("ERISA"), 29 U.S.C. § 1001 *et seq*., and the complete preemption applicable under

section 502 of ERISA, which provides for this Court's jurisdiction in 29 U.S.C. § 1132.

6.  An amended complaint received by defendant is attached and incorporated.

7.  This notice is timely as it is being filed within thirty days of service of any pleading or other document identifying removable claims.

8.  Pursuant to 28 U.S.C. § 1446, a copy of this Notice is being filed with the Supreme Court of the State of New York, County of Nassau.

9.  Upon information and belief, co-defendant, MSC Industrial Direct Co, Inc. Medical Plan, was not served with the amended complaint as of the date of removal.

Wherefore, notice is hereby given that this action is removed to the United States District Court for the Eastern District of New York.

Dated: Ossining, New York
    October 18, 2018

Respectfully submitted,
**LAW OFFICES OF JOHN G. LUBOJA, LLP**

By: *Richard M. Hunter*

Richard M. Hunter (rh-6128)
*Attorneys for Petitioner-Defendant*
*Independence Blue Cross*
500 Executive Boulevard, Suite 103
Ossining, New York 10562
Tel.: (914) 373-5100
Fax: (914) 373-5101
Email: rhunter@lubojalaw.com

To:  Nan Geist Faber, P.C.
    *Attorneys for Respondent-Plaintiff*
    *Long Island Neurosurgical Associates, P.C.*
    996 Dartmouth Lane
    Woodmere, New York 11598
    Tel.: (516) 526-2456
    Fax: (516) 295-2974
    nfaber@nangeistfaber.com

    Clerk of the Court
    Supreme Court of the State of New York
    Nassau County
    100 Supreme Court Drive
    Mineola, New York 11501

FILED: NASSAU COUNTY CLERK 10/10/2018

NYSCEF DOC. NO. 20

INDEX NO. 612431/2017

RECEIVED NYSCEF: 10/01/2018

NYSCEF DOC. NO. 19

INDEX NO. 612431/2017

RECEIVED NYSCEF: 10/03/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
--------------------------------------------------------------------------x
LONG ISLAND NEUROLOGICAL ASSOCIATES, P.C.,

       Plaintiff,

   - against -

INDEPENDENCE BLUE CROSS,

       Defendant.
--------------------------------------------------------------------------x

Index No. 612431/2017

**STIPULATION TO AMEND
COMPLAINT**

IT IS HEREBY STIPULATED AND AGREED, by and between the undersigned, the attorneys of record for the plaintiff and defendant in the above titled action, that plaintiff shall amend the complaint to substitute PAUL NAVARRO, as Guardian for PAUL NAVARRO, JR. for LONG ISLAND NEUROSURGICAL ASSOCIATES, P.C. as plaintiff.

IT IS FURTHER STIPULATED AND AGREED, that plaintiff shall amend the complaint to add MSC INDUSTRIAL DIRECT CO., INC. MEDICAL PLAN as a defendant.

IT IS FURTHER STIPULATED AND AGREED, that all proceedings shall proceed under the following caption:

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

1

FILED: NASSAU COUNTY CLERK 10/10/2018

NYSCEF DOC. NO. 20

NYSCEF DOC. NO. 19

INDEX NO. 612431/2017

RECEIVED NYSCEF: 10/11/2018

INDEX NO. 612431/2017

RECEIVED NYSCEF: 10/03/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU

-----------------------------------------------------------------------x

PAUL NAVARRO, as Guardian for PAUL NAVARRO JR.,

                       Plaintiff,

          - against -

INDEPENDENCE BLUE CROSS AND MSC INDUSTRIAL
DIRECT CO., INC. MEDICAL PLAN,

                       Defendants.  .

-----------------------------------------------------------------------x

Index No. 612431/2017

          IT IS FURTHER STIPULATED AND AGREED, that the proposed Amended Complaint

is deemed served upon all parties who have appeared upon service of a copy of this So Ordered

Stipulation.

Dated: Ossining, New York
       October 3, 2018

Nan Geist Faber, P.C.

By: Nan Geist Faber, Esq.
Attorneys for Plaintiff
996 Dartmouth Lane
Woodmere, New York 11598
Tel.: (516) 526-2456
Fax: (516) 295-2974
nfaber@nangeistfaber.com

Law Offices of John G. Luboja, LLP

Osvalde De La Cruz, Esq.
Attorneys for Defendant
500 Executive Boulevard, Suite 103
Ossining, New York 10562
Tel: (914) 373-5100
Fax: (914) 373-5101
odelacruz@lubojalaw.com

     SO ORDERED:

              10/4/18
Date

J.S.C. Jeffrey S. Brown

**ENTERED**

OCT 10 2018

NASSAU COUNTY
COUNTY CLERK'S OFFICE

2

5 of 2

Case 2:18-cv-05839-DRH-SIL   Document 1   Filed 10/18/18   Page 5 of 21 PageID #: 32

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------x   Index No. 612431/2017
PAUL NAVARRO, as Guardian for PAUL
NAVARRO, JR.,
                                                                      Plaintiff designates Nassau County
                                    Plaintiff,                        as the place of trial

                                                                      The basis of the venue is Plaintiff
              -against-                                               resides in the County

                                                                      SUPPLEMENTAL SUMMONS
                                                                      Plaintiff resides at 410 Lakeville
INDEPENDENCE BLUE CROSS AND MSC                                       Road, Ste 204, New Hyde Park, NY
MSC INDUSTRIAL DIRECT CO., INC. MEDICAL                               11042
PLAN,

                                    Defendants.
------------------------------------------------------------------x

**To the above named Defendants:**

      **You are hereby Summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within 20 days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: Woodmere, New York
      September 25, 2018


                        NAN GEIST FABER, P.C.

                By: *Nan Geist Faber*
                    NAN GEIST FABER
                    *Attorney for Plaintiff*
                    *Paul Navarro, as Guardian for Paul Navarro, Jr.*
                    996 Dartmouth Lane
                    Woodmere, New York 11598
                    (516) 526-2456
                    nfaber@nangeistfaber.com


Defendants' Address:
MSC INDUSTRIAL DIRECT CO., INC. MEDICAL PLAN
75 Maxess Road
Melville, New York 11747-3151
Tel.: (516) 812-2000

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM

NYSCEF DOC. NO. 15

INDEX NO. 612431/2017

RECEIVED NYSCEF: 10/11/2018

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NASSAU
------------------------------------------------------------------X
PAUL NAVARRO, as Guardian for
PAUL NAVARRO, JR.,

                           Plaintiff,

       -against-

INDEPENDENCE BLUE CROSS AND
MSC INDUSTRIAL DIRECT CO., INC.
MEDICAL PLAN,

                         Defendants.
------------------------------------------------------------------X

INDEX NO. 612431/2017

AMENDED COMPLAINT

Honorable Judge Jeffrey S. Brown

        Plaintiff, by his attorney, Nan Geist Faber, Esq., of NAN GEIST FABER, P.C. complaining of the Defendants, respectfully alleges the following upon information and belief:

1.    At all times hereinafter mentioned, Plaintiff, Paul Navarro, as Guardian for Paul Navarro, Jr. ("Plaintiff"), brings this action against Defendants, Independence Blue Cross ("IBC"), and MSC Industrial Direct Co., Inc. Medical Plan (the "Plan") (collectively, "Defendants").[1] The Plan sponsors the Group Benefits Program under which Paul Navarro, Jr., IBC ID Number MGG05181891, a patient of Long Island Neurosurgical Associates, P.C. ("LINA"), received health care coverage. The Plan is self-funded, meaning that it paid the costs of health care for employees out of its own assets.  MSC Industrial Direct Co. Inc. is the plan administrator and employer of Paul Navarro, and IBC is the claims administrator for the Plan.

2.    Plaintiff resides in the County of Nassau, State of New York.

3.    Defendant IBC was and still is a corporation authorized to transact business in the State of New York.

4.    Defendant Plan was and still is a corporation authorized to transaction business in the State of New York.

---

[1] Plaintiff signed a HIPAA release giving permission to reproduce otherwise protected healthcare information in this amended complaint.

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM     INDEX NO. 612431/2017
NYSCEF DOC. NO. 15                                    RECEIVED NYSCEF: 10/11/2018

5.      This is an action under: (i) the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and its governing regulations; (ii) breach of contract; (iii) NY Ins. Law § 4804(a); and (iv) unjust enrichment, concerning IBC's under-reimbursement to Plaintiff for surgical services rendered on January 20, 2015 for Paul Navarro, Jr.(the "Patient"), a minor, who suffers from spina bifida, hydrocephalus, Chiari type II malformation (a life threatening condition where the cerebellum and brain stem extend past the base of the skull), tethered cord and neurogenic bladder and has a history of multiple ventriculoperitoneal shunt revisions. Patient was admitted to Steven and Alexander Cohen Children's Medical Center in New Hyde Park, NY (the "Hospital") on March 20, 2015 for surgery.

6.      The Patient was born on August 19, 2003 with myelomeningocele (a form of spina bifida that occurs when the spinal canal and backbone do not close before birth). Mark A. Mittler, M.D. ("Dr. Mittler"), a surgeon affiliated with LINA, a New York professional corporation and an out-of-network neurosurgical practice group, operated on the Patient's nervous system shortly after he was born for fluid on his brain resulting in hydrocephalus as well as Chiari type II malformation requiring multiple surgeries thereafter. The surgery on January 20, 2015 was for a life threatening obstruction of his shunt.

7.      On behalf of Plaintiff, LINA submitted an invoice to IBC for the January 20, 2015 date of service in the amount of $69,162.00 and was paid $3,459.49.

8.      Dr. Mittler was one of the only pediatric neurosurgeons with privileges at the Hospital who could perform these complex pediatric neurosurgical procedures. The only other pediatric neurosurgeons with privileges at the Hospital who could perform this surgery were also affiliated with LINA.

9.      Dr. Mittler is an officer and director of LINA and is a pediatric neurosurgeon with extensive specialty training and experience in the field of pediatric neurosurgery.

2

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM          INDEX NO. 612431/2017
NYSCEF DOC. NO. 15                                    RECEIVED NYSCEF: 10/11/2018

10.     Dr. Mittler obtained his Bachelor's Degree in Neuroscience in 1987 and his M.D. in 1991 from the University of Rochester. He completed his neurosurgical residency at Brown University in 1998 where he helped transition pediatric neurosurgical care to the newly created Hasbro Children's Hospital. He completed his fellowship in pediatric neurosurgery at Children's Hospital Los Angeles.  In 1999 Dr. Mittler returned to Long Island to further develop pediatric neurosurgery in the region.

11.     Dr. Mittler is a member of the American Association of Neurological Surgeons, the Congress of Neurological Surgeons, the Joint Section of Pediatric Neurosurgery, and the American Society of Pediatric Neurosurgeons. He is board certified by the American Board of Neurological Surgery and the American Board of Pediatric Neurological Surgery. He is a Clinical Associate Professor of Neurosurgery and Pediatrics at the Hofstra North Shore LIJ School of Medicine where he also serves as a member of the Core Admission Committee for Medical Education. Dr. Mittler is the Director of Quality Assurance for the Department of Neurosurgery in the Northwell Health and is Co-Chief of the Division of Pediatric Neurosurgery at Northwell Health and at the Hospital.

12.     Dr. Mittler's clinical expertise includes the management of pediatric brain and spinal cord tumors, vascular malformations, craniosynostosis, hydrocephalus, spinal dysraphism, arachnoid cysts, and traumatic brain injury.

## JURISDICTION AND VENUE

13.     The Court has jurisdiction over this lawsuit as the causes of action arose within the County of Nassau, State of New York.

14.     Additionally, Plaintiff submits to the jurisdiction of this Court, Plaintiff received the medical services that are the subject matter of this lawsuit in the jurisdictional territory of this

3

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM    INDEX NO. 612431/2017
NYSCEF DOC. NO. 15                                RECEIVED NYSCEF: 10/11/2018

Court, and each Defendant, IBC and Plan, systematically and continuously conduct business in the jurisdiction of this Court.

15.     Venue is appropriately laid in the County of Nassau because: (a) IBC resides, is found, has an agent, and transacts business in the County of Nassau; (b) IBC conducts a substantial amount of business in the County of Nassau, including marketing, advertising and selling insurance products, and insures and administers group healthcare insurance plans both inside and outside the County of Nassau, including from offices located in the County of Nassau; (c) the Plan transacts business in the County of Nassau; and (d) the medical services were rendered in the County of Nassau.

## PARTIES

16.     Plaintiff, Paul Navarro, as guardian for Paul Navarro, Jr. is a plan participant of MSC Industrial Direct Co., Inc. Medical Plan. His son, Paul Navarro, Jr. is a beneficiary of the Plan.

17.     Defendant, IBC, is a health care insurance company offers IBC-branded health care insurance in the State of New York.  It provides the administrative services for the claims of MSC Industrial Direct Co., Inc. Medical Plan.

18.     Defendant, MSC Industrial Direct Co., Inc. Medical Plan, is a self-funded group health insurance plan for employees of MSC Industrial Direct Co., Inc., a corporation with offices at 75 Maxess Road, Melville, New York 11747. MSC Industrial Direct Co., Inc. is the Plan Administrator of the MSC Industrial Direct Co., Inc. Medical Plan.  The benefits to employees are paid by the Plan on behalf of the employees.

19.     The plan benefits are described in a booklet (the "Plan Benefits") that states, among other things, that the Plan Administrator, who is a fiduciary under the Plan, has a duty to operate the Plan prudently and in the interest of plan participants and beneficiaries.

4

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM          INDEX NO. 612431/2017

NYSCEF DOC. NO. 15                                      RECEIVED NYSCEF: 10/11/2018

## FACTUAL ALLEGATIONS

20.     On January 20, 2015, Paul Navarro, Jr., a patient of Dr. Mittler and a beneficiary of the Plan, was admitted to the Hospital for surgery.

21.     Dr. Mittler performed, among other things, an L5 laminectomy, microscopic release of tethered spinal cord, mysfascial flat closure and creation of thecal sac.

22.     Dr. Mittler and the physicians of LINA were the only pediatric neurosurgical medical practice with privileges in the Hospital.  They were not in-network, but it obtained prior authorization from IBC under authorization number 1501400061 to perform the surgery on behalf of the Patient.

23.     There was no other pediatric neurosurgical medical practice in Patient's network in the geographic area.  He had no other option other than to have Dr. Mittler or another physician affiliated with LINA render the necessary medical services.

24.     Dr. Mittler performed the surgery on January 20, 2015 at the Hospital.

25.     After the surgery, Dr. Mittler, through LINA's billing company, Business Dynamics ("BD"), submitted an invoice (a CMS-1500 form, as required) to IBC for $69,162.00 representing CPT codes (i) 15734 for $30,000.00 for which only $1,555.33 was paid, (ii) 63200 in the amount of $34,162.00 for which only $2,041.94 was paid, and (iii) 69990 in the amount of $5,000.00 for which $287.42 was paid the medical services rendered on January 20, 2015 on behalf of the Patient.

26.     The total amount billed was $69,162.00, and the total amount paid was $3,884.69.

27.     The explanation of benefits reflected that the patient responsibility was $65,702.51 after processing of this claim.

28.     The explanation of benefits had no justifiable basis for this substantial reduction in the amount paid for the treatment provided.

5

29.    BD filed appeals which were denied on the grounds that the amounts paid were the maximum amounts permissible. BD also requested applicable policy language from IBC to justify the reduction as well as the data used to establish the reimbursement rate, but IBC failed to provide such documentation.

30.    Since IBC did not provide the policy guidelines, it should be required to pay the out-of-network provider based upon reasonable and customary charges (the "UCR") for that specialty and geographic region where the treatment was provided. LINA again requested the policy guidelines and further stated that the payment should be reprocessed based upon the acceptable amount throughout the nation, namely the 80th percentile of Fair Health but the requests were ignored.

31.    These denials were clearly a tactic of IBC to intimidate LINA to avoid paying the UCR for services rendered.

32.    As previously stated, Dr. Mittler and LINA were the exclusive provider for pediatric neurosurgical services at the Hospital; such provider reimbursement rates are typically based upon the UCR for that specialty and the geographical region where treatment was provided.

33.    There were no alternatives to LINA's group care that were in Defendants' network at the Hospital; no other physician other than Dr. Mittler and the physicians of LINA were able to render the complex neurosurgical services required for Patient's medical condition.

## AS AND FOR A FIRST CAUSE OF ACTION

34.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "33" as though more fully set forth herein at length.

35.    IBC violated ERISA when it provided incorrect, unreasonable and invalid purported reasons for its under-reimbursements in its explanation of benefits ("EOB") and failed to provide

6

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM

NYSCEF DOC. NO. 15

INDEX NO. 612431/2017

RECEIVED NYSCEF: 10/11/2018

any reason for its determination in its appeal response. The Plan Administrator is responsible, as fiduciary, for the claim administrator's actions.

29 C.F.R. § 2560.503-1(g) provides as follows:

**Manner and content of notification of benefit determination.**

(1) The plan administrator shall provide a claimant with written or electronic notification of any adverse benefit determination. Any electronic notification shall comply with the standards imposed by 29 CFR 2520 2520.104b-1(c)(1)(i), (iii), and (iv). The notification shall set forth, in a manner calculated to be understood by the claimant -

(i) The specific reason or reasons for the adverse determination;

(ii) Reference to the specific plan provisions on which the determination is based;

(iii) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary;

(iv) A description of the plan's review procedures and the time limits applicable to such procedures, including a statement of the claimant's right to bring a civil action under section 502(a) of the Act following an adverse benefit determination on review;

(v) In the case of an adverse benefit determination by a group health plan -

(A) If an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; or a statement that such a rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination and that a copy of such rule, guideline, protocol, or other criterion will be provided free of charge to the claimant upon request.

36. IBC provided none of the information required by 29 C.F.R. § 2560.503-1(g), in violation of ERISA and the rules promulgated thereunder.

37. These requirements are also set out in the Plan Benefits. Under ERISA, when an insurer fails to follow the procedures set out in the Plan Benefits, the claimant is deemed to have exhausted his administrative remedies.

38. Deemed exhaustion is set out in 29 C.F.R. § 2560-503-1, which states:

7

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM          INDEX NO. 612431/2017

NYSCEF DOC. NO. 15                                        RECEIVED NYSCEF: 10/11/2018

[I]n the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under section 502(a) of [ERISA] on the basis that the plan has failed to provide a reasonable claims procedure that would yield a decision on the merits of the claim.

39.     IBC's EOB dated February 23, 2015 stated that the "amount shown exceeds the maximum amount of benefits allowed by the subscriber's agreement for this service." The EOB further stated that LINA was out-of-network, and that Paul Navarro was responsible for the amount not covered, $65,277.31.

40.     On September 17, 2017, outside counsel for LINA sent an appeal letter to IBC requesting that it reprocess the claim. IBC never responded.

41.     The Plan Benefits governing Paul Navarro's Plan provides no justification for IBC's reimbursement of out-of-network providers based on the "maximum amount of benefits allowed by the subscriber's plan for this service." The Plan bases reimbursement on the Recognized Charge. This charge is not a fee schedule, contracted amount, or legislated fee arrangement. It is not the maximum allowable amount.

42.     In addition, this surgery was urgent and the Patient's life was threatened without it. There was no pediatric surgeon with Dr. Mittler's qualifications (other than those also affiliated with LINA) who could perform this specialized neurosurgery, and no surgeon within IBC's in-network panel in the geographic area.

## AS AND FOR A SECOND CAUSE OF ACTION

43.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "42" as though more fully set forth herein at length.

44.     At a minimum, to establish a proper amount under the member's "allowable or contracted/legislated fee arrangement," IBC must base it on what it contractually paid other in-

8

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM   INDEX NO. 612431/2017
NYSCEF DOC. NO. 15                                   RECEIVED NYSCEF: 10/11/2018

network pediatric neurosurgeons with qualifications equal to or better than Dr. Mittler.  These qualifications include board certifications, specialty training, outcome success, and hospital privileges.  If IBC were to find that it had no in-network pediatric neurosurgeon meeting these qualifications, it should pay at the billed amount because it has no in-network rate to pay.  IBC failed to pay the in-network amount.

45.    These services were consequently reimbursable at the UCR for this specialty and geographical region where treatment was provided, and Defendants' failure to pay the claim in accordance with the UCR for LINA's geographical location was erroneous and unjustifiable.

46.    All of the aforesaid medical services were provided by Dr. Mittler and LINA for the benefit of the Patient and required to be paid for by Defendants.

**AS AND FOR A THIRD CAUSE OF ACTION**

47.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "46" as though more fully set forth herein at length.

48.    Defendants have allegedly processed the claims filed by LINA incorrectly, recklessly and carelessly.  Defendants' failure to reopen and reprocess this claim at the UCR for services rendered constitutes a breach of contract.

49.    This determination was a means for Defendants to circumvent compensating LINA for its professional medical services rendered for the Patient at the UCR for the geographic area and based upon the skill, experience, experience of Dr. Mittler and LINA and complexity of the medical services and ultimately leaving Plaintiff responsible to pay LINA the balance of amounts not paid by Defendants under the patient responsibility portion of the EOB.

50.    Patient had no option other than LINA to perform the medical services since there were no pediatric surgeons in the network available to Patient in the geographic area.

9

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM     INDEX NO. 612431/2017

NYSCEF DOC. NO. 15                                                          RECEIVED NYSCEF: 10/11/2018

51.     Because Dr. Mittler was the only pediatric neurosurgeon with privileges at the Hospital who could perform the complex surgery that the Patient required (other than two other surgeons affiliated with LINA), including any in-network pediatric neurosurgeon, IBC should have defined Dr. Mittler as in-network provider and paid him at an in-network rate, if such a rate could be determined, or at full billed charges where, as here, it could not legitimately determine an in-network rate.

52.     IBC does not have any pediatric neurosurgeons in its network not only with Dr. Mittler's expertise to perform this surgery and privileges at the Hospital, but anywhere in Nassau County or the expanded geographical area at all.  The Patient could not have had this surgery performed by an IBC in-network pediatric neurosurgeon because there were none in IBC's network in the entire County or geographic area.

53.     This is not surprising.  There are only three pediatric neurosurgeons in Nassau County who can perform this complex pediatric neurosurgery, and all are associated with LINA.  The procedural codes for which Plaintiff billed IBC are considered some of the most complex codes in pediatric neurosurgery.

54.     Based on the above, and consistent with the terms of the Plan Benefits, Plaintiff should have been paid the in-network rate or, alternatively, the UCR or, alternatively, the billed amount.

<u>**AS AND FOR A FOURTH CAUSE OF ACTION**</u>

55.     Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "54" as though more fully set forth herein at length.

56.     Plaintiff's claims are consistent with NY Ins. Law § 4804(a), which states:

**Access to Specialty Care**

If an insurer offering a managed care product determines that it does not have a health care provider in the in-network benefits portion of its network with appropriate training and experience to meet the particular health care needs of an

10

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM
NYSCEF DOC. NO. 15

INDEX NO. 612431/2017
RECEIVED NYSCEF: 10/11/2018

insured, the insurer shall make a referral to an appropriate provider, pursuant to a treatment plan approved by the insurer in consultation with the primary care provider, the non-participating provider and the insured or the insured's designee, at no additional cost to the insured beyond what the insured would otherwise pay for services received within the network.

57.     IBC should have determined that it did not have an appropriate provider in its network and made a referral to the only appropriate provider, Dr. Mittler. It should have paid LINA the in-network rate for these procedures, which would have resulted in Paul Navarro incurring no additional costs other than the co-pay and deductible an insured would be liable to pay for in-network services.

58.     NY Ins. Law § 4804(a) is consistent with the terms of the Plan Benefits and does not impose additional or inconsistent terms. Accordingly, it is not preempted by ERISA.

59.     Alternatively, IBC should have offered LINA a Single Case Agreement. Such an agreement is common among insurers and out-of-network providers where the insurer does not have a provider in its network which can provide the required procedures or services for its member. It is a one-time agreement negotiated with the provider and does not encompass services beyond that provided to the single member. As such, it is a negotiated exception to the rates set out in the Plan Benefits governing out-of-network reimbursement or a reimbursement for urgent medical care. By under-reimbursing LINA, Defendants left Plaintiff exposed to LINA for the unreimbursed medical expenses rendered to the Patient.

60.     In addition to the above, Plaintiff contends that under the New York State Insurance Law, (i) Defendants must ensure that the Patient is "held harmless" of any charges beyond their in-network obligation when treated by an out-of-network provider, and (ii) health plans are required to issue coverage for out-of-network services utilizing usual and customary rate ("UCR") at the minimum 80th percentile.

11

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM    INDEX NO. 612431/2017
NYSCEF DOC. NO. 15                                    RECEIVED NYSCEF: 10/11/2018

61.    Under New York State balance billing laws, the Patient may be responsible for the difference between the billed ($69,162.00) and amount paid ($3,459.49) which totals $65,702.51.

62.    Defendants acknowledge this liability to Plaintiff in the EOB which stated the Patient Responsibility was $65,702.51.

63.    Accordingly, if Defendants do not pay Plaintiff, they will be violating the Fair Health rules and in doing so, require Patient to pay the cost for the unpaid services to Plaintiff.

64.    As of the date hereof, only $3,459.49 has been paid to Plaintiff leaving a balance due to LINA of $65,702.51 plus interest from January 20, 2015 plus costs.

65.    By reason of the foregoing, Plaintiff has suffered damages and demands that the Plan pay the UCR of the professional medical and surgical services provided totaling $65,702.51, together with interest thereon from January 20, 2015 and costs and disbursements.

## AS AND FOR A FIFTH CAUSE OF ACTION

66.    Plaintiff repeats, reiterates and realleges each and every allegation contained in paragraphs "1" through "65" as though more fully set forth herein at length.

67.    The Plan is liable to Plaintiff under a theory of unjust enrichment.

68.    Unjust enrichment is defined as "To prevail on a claim of unjust enrichment, a party must show that (a) the other party was enriched, (b) at that party's expense, and (c) that it is against equity and in good conscience to permit [the other party] to retain what is sought to be recovered." *Robertson v Wells*, 95 AD3d 862, 864 (2d Dept. 2012).

69.    On January 20, 2015, Dr. Mittler performed medical services for Patient. These services were performed in good faith by Dr. Mittler and LINA and accepted by the Plaintiff, Dr. Mittler and LINA.

70.    Throughout the pendency of these services, Plaintiff maintained expectation that full and complete compensation would be rendered by Defendants to LINA at the UCR and Defendants

12

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM   INDEX NO. 612431/2017
NYSCEF DOC. NO. 15                                RECEIVED NYSCEF: 10/11/2018

never made any representation to the contrary to Plaintiff. The reasonable value of those services for which Defendants should have paid LINA was $69,162.00.

71.    As of the date hereof, only $3,459.49 was allowed for Plaintiff and this sum includes $2,287.08 applied to Patient's deductible. As a result Plaintiff has been paid only $3,459.49, leaving a balance due of $65,702.51 plus interest from January 20, 2015 plus costs.

72.    Defendants' failure to pay for the services rendered has enabled the Plan to retain and benefit from the sum of $65,702.51 plus interest from January 20, 2015 that should have been paid to Plaintiff. Said failure to pay Plaintiff resulted in damages to Plaintiff in the amount of $65,702.51 plus interest from January 20, 2015, no part of which has been paid, although demand for payment of same has been duly made by Plaintiff, plus costs, interest and legal fees.

73.    To the extent that any part of such amount billed is not paid to Plaintiff, the Plan will be unjustly enriched to the detriment of Plaintiff. The Plan is therefore indebted to Plaintiff under a theory of unjust enrichment in the amount of $65,702.51 plus interest from January 20, 2015 and costs.

74.    By reason of the above, Defendants have breached their contract with Plaintiff and Patient and are obligated to pay Plaintiff the sum of $65,702.51 for the unpaid medical services rendered for the Patient plus interest from January 20, 2015 and costs.

## CONCLUSION

### I. CLAIM AGAINST IBC FOR UNPAID BENEFITS UNDER EMPLOYEE BENEFIT PLAN GOVERNED BY ERISA, BREACH OF CONTRACT, AND BREACH OF NY STATE INSURANCE LAWS

75.    As the claims administrator for the Plan, IBC is obligated to pay benefits to Plan participants and beneficiaries in accordance to the terms of the Plan, and in accordance with ERISA.

13

Case 2:18-cv-05820-DRH-SIL   Document 1   Filed 10/18/18   Page 19 of 21 PageID #: 46

76.     IBC violated its legal obligations under this ERISA-governed plan when it under-reimbursed LINA for pediatric neurosurgical services provided to the Patient, a Plan beneficiary, in violation of the terms of the Plan Benefits with Plaintiff and therefore in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B) and for failing to provide the Plan Benefits to LINA.

77.     IBC breached the contract when it failed to properly administer the terms of the Plan Benefits between Plaintiff and the Plan by under paying LINA for the medical services provided to Patient.

78.     IBC violated the New York State Insurance Laws.

79.     Plaintiff seeks unpaid benefit, and statutory interest back to the date Plaintiff's claim was originally submitted to IBC. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against IBC.

### II. CLAIM AGAINST MSC INDUSTRIAL DIRECT CO., INC. MEDICAL PLAN FOR BREACH OF CONTRACT, BREACH OF NY STATE INSURANCE LAWS AND BREACH OF FIDUCIARY DUTY

80.     As the Plan Administrator and Plan Sponsor for the Plan, the Plan violated its legal obligations under this ERISA plan when, through its Claims Administrator, IBC, it under-reimbursed LINA for the surgical services provided to the Patient, a Plan beneficiary, in violation of the terms of the Plan Benefits and therefore in violation of ERISA § 502(a)(l)(B), 29 U.S.C. § 1132(a)(l)(B) and by failing to provide the Plan Benefits to LINA, thereby exposing Plaintiff for the unpaid balance.

81.     The Plan breached the contract when it failed to properly reimburse LINA for the medical services provided for Patient pursuant to the terms of the Plan Benefits between Plaintiff and the Plan by under paying LINA for the medical services provided to Patient.

82.     The Plan violated the New York State Insurance Laws.

14

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM
NYSCEF DOC. NO. 15

INDEX NO. 612431/2017

RECEIVED NYSCEF: 10/11/2018

83.    Plaintiff further seeks unpaid benefits and statutory interest back to the date Plaintiff's claim was originally submitted. It also seeks attorneys' fees, costs, prejudgment interest and other appropriate relief against the Employer.

### III. CLAIM AGAINST MSC INDUSTRIAL DIRECT CO., INC. MEDICAL PLAN FOR VIOLATION OF ERISA 404 § (A)(1)(B)

84.    As the Plan Administrator and Plan Sponsor for the Plan, the Plan is a fiduciary, and under ERISA § 404(a)(1)(B), 29 U.S.C. § 1104 (a)(1)(B) it must discharge its duties solely in the interest of Plan participants and beneficiaries.

85.    The Plan must act prudently with the care, skill, prudence and diligence that a prudent fiduciary would use, and must ensure that they are acting in accordance with Plan Benefits.

86.    An ERISA fiduciary cannot fully delegate its fiduciary responsibilities to another entity. For example, the Plan cannot fully delegate its fiduciary responsibilities to its claims administrator, IBC and be free of its fiduciary responsibilities under ERISA.

87.    As a fiduciary, the Plan owed Plaintiff a duty of loyalty and to the avoidance of self-dealing.  It cannot, as a self-funded plan, permit its claims administrator to make claims determinations that would save the Plan money at the expense of its participants that violate the terms of the Plan Benefits.

88.    The Plan breached its duty of loyalty and violated its fiduciary responsibilities to Plaintiff by failing to ensure that its claims administrator was reimbursing Plaintiff according to the Plan Benefits.  Instead, IBC under-reimbursed LINA for the urgent surgery rendered for Patient, a beneficiary of Plaintiff's Plan, and the Plan failed to monitor and correct IBC's misconduct, despite the Plan's continuing duty to do so.

89.    Plaintiff seeks relief under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which includes declaratory relief, surcharge, profits, and removal of a fiduciary that breached its duties.

15

FILED: NASSAU COUNTY CLERK 09/24/2018 10:10 AM
NYSCEF DOC. NO. 15

Case 2:18-cv-05829-DRH-SIL   Document 1   Filed 10/18/18   Page 21 of 21 PageID #: 148
NYSCEF: 10/31/2017
RECEIVED NYSCEF: 10/11/2018

**WHEREFORE,** Plaintiff demands judgment in its favor against IBC and the Plan as follows:

(a)   Ordering IBC and Plan to recalculate and issue unpaid benefits to LINA on behalf of the Plaintiff;

(b)   Ordering declaratory relief;

(c)   Ordering the remedies of surcharge, profits, and the removal of a disloyal Plan fiduciary;

(d)   Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' fees, costs and expenses in amounts to be determined by the Court;

(e)   Awarding prejudgment interest; and

(f)   Granting such other and further relief as is just and proper.

Dated:  September 24, 2018

NAN GEIST FABER, P.C.

By: _Nan Geist Faber_

Nan Geist Faber, Esq.
*Attorney for Plaintiff*
*Paul Navarro, as Guardian for*
*Paul Navarro, Jr.*
996 Dartmouth Lane
Woodmere, NY 11598
T. (516) 526-2456
nfaber@nangeistfaber.com

To: Law Offices of John G. LuBoja, LLP
    Richard M. Hunter, Esq.
    *Attorneys for Defendant*
    *Independence Blue Cross*
    500 Executive Boulevard, Suite 103
    Ossining, NY 11562
    Tel: (914) 373-5100
    rhunter@lubojalaw.com

16